Filed 6/23/14  Heller v. Ralph's Grovery Co. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| JACOB HELLER, | B249608 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC486035) |
| v. | |
| RALPH'S GROCERY COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jane Johnson, Judge.  Affirmed.

R. Rex Parris Law Firm, R. Rex Parris, Alexander R. Wheeler, Kitty Szeto and John M. Bickford; Lawyers for Justice, Edwin Aiwazian and Jill J. Parker for Plaintiff and Appellant.

Morrison and Foerster, Miriam A. Vogel, David F. McDowell and Purvi G. Patel for Defendant and Respondent.

Plaintiff Jacob Heller ("Heller"), on behalf of himself and all others similarly situated, sued Ralphs Grocery Company ("Ralphs") for unfair competition based on violations of Civil Code section 1749.60 et seq., The Supermarket Club Card Disclosure Act of 1999 ("the Club Card Act"), by selling and/or sharing its customers' personal identification information without their consent. Ralphs demurred to the complaint, contending that Heller had no standing to prosecute his claims, as he alleged no economic injury resulting from Ralphs' business practices, a necessary element of a cause of action under Business and Professions Code[1] section 17200 et seq., the Unfair Competition Law ("UCL"). Heller maintained that his claims were not subject to the standing requirements of the UCL, and that in any event, his allegations of economic injury were sufficient to state a cause of action under the UCL. The trial court concluded that, because he failed to allege a sufficient nexus between Ralphs' alleged violations of the Club Card Act and his economic injury, Heller had no standing to pursue his claims. We agree, and so affirm the judgment.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The gist of Heller's claim is that personal information, which he provided to Ralphs when he applied for membership in Ralphs' free rewards card program, was improperly shared with Ralphs' "subsidiaries, affiliates, agents, representatives, and trusted business partners." More specifically, Heller alleges that Ralphs shared his personal information with Kroger (Ralphs' parent corporation), dunnhumby USA, Inc. (an entity owned in part by Kroger), and "an unknown business entity" (later identified by Heller as "Metasource, LLC") and described by Heller as a "third party entity that processes the information contained in the Ralphs rewards card application and inputs the data contained therein into a computer database." He alleges that but for Ralphs' failure to disclose the sharing of his personal information, he would not have applied for a

---

[1] Unless otherwise specified, statutory references are to this code.

2

rewards card and, "in all reasonable probability, would not have shopped at Ralphs stores."

On June 6, 2012, Heller filed a class action complaint against Ralphs alleging that the company violated the Club Card Act, and consequently the UCL, by improperly sharing its reward card customers' personal identification information and their purchases with third parties, whenever they used their Ralphs rewards cards. Ralphs filed a demurrer to the complaint and a motion to strike portions of the complaint. In its demurrer, Ralphs asserted that Heller lacked standing to bring a UCL action because the complaint failed to allege how Heller suffered economic damages, i.e., lost money or property, as a result of Ralphs' alleged violation of the Club Card Act.

In opposition to the demurrer, Heller argued that he and his fellow class members had suffered economic damages "because they would not have applied for a Ralphs rewards card and/or would not have shopped at Ralphs grocery stores and/or would not have purchased as many items from Ralphs grocery stores" had they known that Ralphs was sharing their personal information and purchases with third parties in violation of the Club Card Act.

On December 13, 2012, the trial court issued its tentative ruling and heard oral argument on the demurrer and motion to strike. The trial court relied on *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310 ("*Kwikset*") to rule that Heller had no standing to bring the UCL claim. The court explained: "The question is whether [Heller's] allegations are] sufficient to allege injury in fact. Here, [Ralphs] makes a logical point; that is, it does not appear that there is a nexus between the gravamen of the UCL claim (alleged disclosure of customer's personal information in violation of the Supermarket Club Card Act) and economic injury (spending money at Ralphs that Heller would not otherwise have done had he known that his personal information would have been misused). Unlike the plaintiff in *Kwikset* who intended to buy a product made in the USA (and got one that was made in a foreign county), [Heller] spent no money to get [the Ralphs Rewards Card]. If the product is the groceries, which he bought in Ralphs, there is no allegation that the product was not as represented."

3

The court then invited further briefing on the issue of whether it is "sufficient for UCL purposes that damages for a UCL violation can be based on the allegation that [Heller] would not have purchased goods from [Ralphs]."

The parties engaged in further briefing, but their further arguments did not change the court's decision. At the second hearing on the demurrer and motion to strike, the court sustained the demurrer to the UCL cause of action for an alleged violation of the Club Card Act without leave to amend. The demurrer to the remaining causes of action was sustained with leave to amend to "articulate [his] damages better."

Heller subsequently filed an amended complaint, to which Ralphs again demurred, arguing that Heller lacked standing to assert any claim against Ralphs because "there is no nexus between Ralphs' alleged wrongdoing and the injury he claims." The trial court agreed and sustained the demurrer to the remaining causes of action without leave to amend. The case was thereafter dismissed.

STANDARD OF REVIEW

Because the function of a demurrer is to test the sufficiency of the pleading as a matter of law, the appellate court applies the de novo standard of review following the dismissal of an action subsequent to the sustaining of a demurrer without leave to amend. (*California Logistics, Inc. v. State* (2008) 161 Cal.App.4th 242, 247.) In the context of an appeal from a dismissal following a demurrer, the reviewing court will assume the truth of all facts properly pleaded (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6), and will examine the operative pleading to determine whether it states a cause of action on any available theory. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506; *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908.) The court will not, of course, assume the truth of contentions, deductions, or conclusions of fact or law (*Jenkins, supra,* at p. 506), and will not treat as true allegations that are flatly contradicted by other allegations in the same or prior pleadings, or by exhibits to the complaint. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1189, fn.1;

4

*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83; *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044-1045.)

DISCUSSION

1. *Heller lacks standing to sue under the UCL*

The Club Card Act prohibits supermarket club card issuers from requesting in a club card application, or requiring as a condition of obtaining a club card, that the applicant provide a driver's license number or a social security number. (Civ. Code, § 1749.64.) The Act also prohibits a club card issuer from selling or sharing a cardholder's name, address, telephone number, or other personal identification information unless, among other things, it charges an annual fee, is not open to the public but only to cardholders, or provides a privacy statement to the cardholder "notifying cardholders that outside companies will be receiving marketing information including names and addresses of cardholders, and the cardholder has agreed to allow the club card issuer to share this information." (Civ. Code, § 1749.65, subd. (c)(4).) The Club Card Act itself contains no enforcement or penalty provisions, but instead provides that "A violation of [the Act] constitutes 'unfair competition' as defined in Section 17200 of the Business and Professions Code and is punishable as prescribed [by the UCL]." (Civ. Code, § 1749.63.)

The UCL includes extensive enforcement procedures for the prosecution of unfair competition actions. Government prosecutors may seek civil penalties of up to $2,500 for each violation of the UCL (§ 17206, subd. (a)) as well as injunctive relief (§ 17203). In addition, a person who meets the standing requirements of the UCL may pursue representative claims or relief on behalf of others. (§ 17203.)

Proposition 64 (adopted Gen. Elec., Nov. 2, 2004) amended the UCL to limit standing to one who has "suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204; see also *Buckland v. Threshold Enterprises* (2007) 155 Cal.App.4th 798, 819-820.) "The text of Proposition 64 establishes expressly that in selecting this phrase the drafters and voters intended to incorporate the established federal

5

meaning. The initiative declares: 'It is the intent of the California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been *injured in fact under the standing requirements of the United States Constitution*.' (Prop. 64 § 1, subd. (e), italics added; see *also Buckland v. Threshold Enterprises, Ltd.*[, *supra,*] 155 Cal.App.4th [at p.] 814.)" (*Kwikset, supra,* 51 Cal.4th at p. 322.) Thus, under the UCL as amended by Proposition 64, a plaintiff must allege and prove both (a) a loss or deprivation of money or property sufficient to qualify as injury in fact, and (b) that the economic injury resulted from the unfair business practice which is the gravamen of the claim. (*Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1553-1554; *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 849.)

The trial court sustained Ralphs' demurrer to Heller's complaint under the UCL based on Heller's inability to allege an economic injury, i.e., loss of money or damages suffered by Heller as a result of Ralphs' alleged violations of the Club Card Act. Heller maintains that this was error, as his allegations are sufficient to satisfy the injury-in-fact requirement of the UCL.

We agree with the trial court's conclusion that Heller failed to allege an economic injury sufficient to meet the standing requirements of the UCL. His only allegations of economic damages suffered are found in paragraphs 23 and 24 of the complaint wherein he alleges that in the absence of Ralphs' misrepresentation and/or nondisclosure, as described above, he would not have obtained a Ralphs rewards card and "in all reasonable probability would not have shopped at Ralphs grocery stores, and/or would not have purchased as many items from Ralphs grocery stores." What is notably missing from this allegation is how he suffered an economic injury, i.e., loss of property or money, resulting from his use of the Ralphs reward card. The card was provided without cost to him, and it provided him with discounts on certain products. There are no allegations that any product purchased was not as represented.

Heller's reliance on *Kwikset Corp. v. Superior Court*, *supra*, 51 Cal.4th 310 is misplaced. In *Kwikset,* the plaintiff sued a business entity for restitution and injunctive relief under the UCL and the False Advertising Law (§ 17500 et seq.), alleging that

defendants violated the statutory provisions prohibiting marketing or sale of merchandise with "Made in U.S.A." or similar labels when merchandise either contained foreign made parts or involved a foreign manufacturer.  In regard to the issue of standing, the Supreme Court held that:  (a) plaintiffs who were deceived by a product's label into spending money to purchase the product have "lost money or property' as required for UCL standing; (b) consumers' alleged purchases of mislabeled locksets established injury in fact and loss of money and property; and (c) ineligibility for restitution is not a basis for denying standing under the UCL.  In doing so, it noted that the substantive reach of the UCL, while still expansive, had been limited by Proposition 64.  Where once private suits could be brought by any person acting for the interests of itself, its members or the general public, now private standing is limited to persons who have suffered injury in fact and have lost money or property as a result of unfair competition.  The court stated in this regard:  "While the voters clearly intended to restrict UCL standing, they just as plainly preserved standing for those who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices."  (*Kwikset, supra,* 51 Cal.4th at p. 321.)  Further, a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct.  (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 328.)

Unlike the plaintiff in *Kwikset*, who intended to buy a product made in the U.S.A. but received one made in a foreign country, Heller does not allege that he did not get the product he intended to buy.  Because the complaint contains no allegation that any product Heller purchased at Ralphs was not as represented, and Heller paid nothing for the reward card itself, there is no nexus between Ralph's alleged unfair business practice (using Heller's personal information) and the money he paid for the products he chose to buy and used or consumed without complaint.

Heller also contends on appeal, as he did before the trial court at the hearing on the demurrer, that the requirement that a plaintiff must plead and prove economic damages in a UCL action does not apply when the basis of the UCL action is an alleged violation of the Club Card Act.  We disagree.

Civil Code section 1749.63 provides that a "violation of the [Club Card Act] constitutes 'unfair competition' as defined in Section 17200 of the Business & Professions Code and is punishable as prescribed [by the UCL]." This language says nothing about any of the other requirements of a UCL cause of action (such as standing or damages) and does no more than establish that there is no private cause of action which can be brought under the Club Card Act; rather, an action for a violation of the Act must be brought as a UCL action. (See *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 133.)

Heller's contention that the Club Card Act adopted specific provisions of the UCL, as that law existed at the time the Club Card Act was enacted (that is, before the UCL was amended by Proposition 64) is not convincing. "Where a statute adopts by specific reference the provisions of another statute, the provisions are incorporated as they exist at the time of the reference and not as subsequently modified. Where the reference is general instead of specific, the referring statute takes the laws in their contemporary form and as they may be changed from time to time." (*Christian v. Flora* (2008) 164 Cal.App.4th 539, 551; see also *In re Jovan B.* (1993) 6 Cal.4th 801, 816 [referring statute takes the law referred to not only in its contemporary form but also as it may be changed from time to time].)

As previously stated, the Club Card Act's adoption of the UCL is general, not specific: Civil Code Section 1749.63 provides that a "violation of [the Club Card Act] constitutes 'unfair competition' as defined in Section 17200 of the Business and Professions Code and is punishable as prescribed [by the UCL]." No specific remedy is mentioned and no specific amount is stated. The Club Card Act simply adds specific business practices to the list of business practices prohibited under the UCL.[2] Economic injury resulting from the unfair business practice is an element of a UCL claim. Heller

---

[2] We note as well that section 12 of the Business and Professions Code specifically provides that "Whenever any reference is made to any portion of this code or of any other law of this State, such reference shall apply to all amendments and additions thereto now or hereafter made."

was not able to allege this element in his UCL claim. (See *In re Derrick B.* (2006) 39 Cal.4th 535, 539.)

While the Supreme Court in *Kwikset* broadened the situations in which a plaintiff can recover under the UCL (*Kwikset, supra,* 51 Cal.4th at p. 323),[3] it did not eliminate the requirement that, in order for a plaintiff to have standing to bring a UCL action, he or she must allege and prove that loss of money or property. Because Heller was not able to allege an economic injury, the trial court properly sustained Ralphs' demurrer to the UCL cause of action without leave to amend.

### 2. *Heller's remaining claims failed to state a cause of action*

After sustaining the demurrer to Heller's causes of action for breach of contract, fraud, intentional misrepresentation and negligent misrepresentation, the trial court granted Heller leave to file an amended complaint. Heller did so, alleging additional facts about what Ralphs did and did not "guarantee" regarding its customers' personal information, but otherwise repeating the basic theme of the original complaint. Ralphs demurred once more, arguing that the remaining claims, for misrepresentation and breach of contract, still failed to state a cause of action because Heller failed to allege any damages resulting from Ralphs' alleged misrepresentations and breach of contract resulting from what Ralphs allegedly did or did not do. The trial court sustained the demurrer without leave to amend when Heller's counsel was not able to articulate how he could further amend the complaint to cure the failure to allege actual damages.

---

[3]    The Supreme Court stated in part: "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." (*Kwikset*, *supra*, 51 Cal.4th at p. 323.)

a. *Fraud, intentional misrepresentation and negligent misrepresentation*

"The well-known elements of a cause of action for fraud are: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173.) The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. (*Ibid.*) In both causes of action, the plaintiff must plead with particularity that he or she actually relied on the misrepresentation. (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1088-1089.)" (*Cadlo v. Owens-Illinois, Inc*. (2004) 125 Cal.App.4th 513, 519-520.) Moreover, there must be a causal connection between the misrepresentations and the alleged damages resulting there from. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.) All of these elements must be present for fraud to be found; the absence of a single element is fatal to recovery. (*Ach v. Finkelstein* (1968) 264 Cal.App.2d 667.) In the absence of a fiduciary relationship (and none was alleged here), recovery in a fraud action is limited to the actual damages suffered by the plaintiff. (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 565.)

The trial court properly sustained the demurrer for failure to state a cause of action based on fraud. As discussed above, the fraud allegations were deficient due to Heller's inability to articulate how he suffered any damages as a result of the alleged misrepresentation.

b. *Breach of Contract.*

To state a claim for breach of contract, the plaintiff must plead and prove "the existence of a contract, [the plaintiff's] performance of the contract or excuse for nonperformance, the defendant's breach, and resulting damage." (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307.) Again, the demurrer was sustained based upon Heller's inability to allege damages resulting from the alleged breach of

contract.  Because the complaint failed to allege a necessary element of a cause of action for breach of contract, it was subject to demurrer.

## DISPOSITION

The judgment is affirmed.  Ralphs is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]


We concur:


TURNER, P.J.


MOSK, J.

---

[*]    Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11